UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAWRENCE GENE MORTON and TRUDI MARLENE MORTON, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN LUNDE; JIM CRUSE; STEVE CORBY; and BONNER COUNTY DETENTION CENTER DEPUTIES HARRISON; PULFORD; WISE; and CABLE; and their Employer, BONNER COUNTY, IDAHO; and JOHN DOES 1-10,<br><br>Defendants. | Case No. CV 06-175-N-EJL<br><br>**MEMORANDUM ORDER** |

Pending before the court in the above-entitled matter is Defendants' motion for summary judgment (Docket No. 13). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM ORDER - 1**

## I. FACTUAL BACKGROUND

Police Officers John Lunde and Jim Cruse were dispatched at approximately 11:50 p.m. on April 7, 2004 to North Baldy, Bonner County, Idaho, to respond to a 911 call from a six year old girl who believed she was left alone at home. Upon arriving at the house, Cpl. Lunde knocked on the door and the girl answered, crying, and explained she had awakened in the night and could not find her parents or anyone else in the house. The officers entered the house and heard a noise coming from another room. Cpl. Lunde shined his flashlight into the room, and saw a man lying on the bed. The man was the Plaintiff, Mr. Morton, who later informed the officers that the house was his. Cpl. Lunde noticed the strong smell of alcohol coming from the room where Mr. Morton had been sleeping, and observed that Mr. Morton appeared to be intoxicated: he was unsteady on his feet; his eyes were extremely bloodshot and glassy; his face was flushed; his speech was slurred. Cpl. Lunde asked Mr. Morton for his name and identification several times, explaining he was in the middle of an investigation and was trying to determine who the child was and if Mr. Morton had a legal right to be in the house. Cpl. Lunde warned Mr. Morton that if he did not comply he could face criminal charges, at which point Mr. Morton agreed to give Cpl. Lunde his driver's license.

Cpl. Lunde asked Mr. Morton where the child's parents were. Mr. Morton responded that they may be at a brother's house, but when Mr. Morton attempted to phone them, nobody answered.

Cpl. Lunde explained to Mr. Morton that he had to be sure the child was being adequately cared for. Cpl. Lunde then informed Mr. Morton that he would not be allowed to stay with the child unless he submitted to a breath test and it showed Mr. Morton to be below the legal limit of intoxication. Mr. Morton replied "just arrest me then, I'm not blowing on the breath machine."

Cpl. Lunde then informed Mr. Morton that he was under arrest. Mr. Morton started to comply, but then stiffened and attempted to pull away. Officer Cruse grabbed Mr. Morton's right hand as Cpl. Lunde attempted to place Mr. Morton on the ground. Mr. Morton then rolled over onto his back and kicked Cpl. Lunde in the hand, injuring the officer's left thumb and wrist. Cpl. Lunde then sprayed Mr. Morton in the face with pepper gas as the officers attempted to gain control of Mr. Morton. Mr. Morton continued to kick and wrestle with Officer Cruse and Cpl. Lunde. During this struggle, Mr. Morton reached down to his right hip and opened a knife sheath. Cpl. Lunde quickly drew his service weapon and informed Mr. Morton that deadly force would be used if he did not stop. Cpl. Lunde ordered Mr. Morton to the ground and told him to put his hands behind his back.

When Mr. Morton did not comply, Officer Cruse struck him on the buttocks with his baton and ordered him to put his hands behind his back. Mr. Morton continued to refuse. Officer Cruse then struck Mr. Morton on the back of the thigh, told him to lie down and put his hands behind his back, at which point Cpl. Lunde handcuffed Mr. Morton. However, Mr. Morton refused the officers' early attempt to decontaminate him from the pepper gas.

The officers transported Mr. Morton to jail. Once there, the officers and the detention center deputies decontaminated Mr. Morton using a shower. Officer Cruse had Mr. Morton lean over at the waist and informed him he did not want the pepper gas to wash down the front of his chest which was bare at the time, and into his groin area because the heat would accumulate there. After Mr. Morton's assurances that he would not attempt to fight, the deputies removed the handcuffs and allowed Mr. Morton to wash his face. Mr. Morton was then escorted inside the jail and taken to another set of showers, where he was allowed to continue showering. After an extended time in the

**MEMORANDUM ORDER - 3**

shower, Mr. Morton was instructed to get out of the shower. However, Mr. Morton instead responded with profanity and refused to exit the shower. Officer Cruse then went inside the shower and told Mr. Morton he needed to get out of the shower or he would be "tased." When Mr. Morton asked what that was, Officer Cruse explained, and told him that it was worse than pepper gas, at which point Mr. Morton agreed to exit the shower.

Plaintiffs Mr. Morton and his wife Trudi Morton filed a Tort Claim Notice pursuant to Idaho Code § 6-906 and § 6-907 with the County Clerk of Bonner County, Idaho. Plaintiffs then filed a complaint in Idaho District Court on or about April 4, 2006, against Officers Lunde and Cruse, as well as Detention Center Deputies Corby, Harrison, Pulford, Wise and Cable, and against Bonner County, Idaho, and John Does 1-10. Plaintiff Mr. Morton has brought several claims under state law against Officer Lunde and Officer Cruse, including negligent and intentional infliction of emotional distress, unlawful restraint, battery, assault, and unlawful arrest. Mr. Morton has also brought claims under state law against Detention Center Deputies Corby, Harrison, Pulford, Wise and Cable for unlawful imprisonment, battery, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress. In addition, Mr. Morton has also brought a civil rights claim under 42 U.S.C. § 1983, against Officer Lunde and Officer Cruse, the detention center deputies, and Bonner County, alleging they each violated Mr. Morton's civil rights during and immediately following the arrest. Additionally, Plaintiff Trudy Morton alleges loss of consortium as a direct and proximate result of the Defendants' actions.

This case was removed to United States Federal District Court on May 4, 2006. On February 16, 2007 Defendants filed this motion for summary judgment, which has been contested by Plaintiffs.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

---

[1] See also, Rule 56(e) which provides, in part:
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM ORDER - 5**

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

**MEMORANDUM ORDER - 6**

### III. ANALYSIS

**A. Action against Bonner County, Idaho**

Defendants move for summary judgment on the Plaintiffs' charges against Defendant Bonner County alleging civil rights violations under 42 U.S.C. § 1983. Plaintiffs concede that summary judgment in favor of Bonner County, Idaho is appropriate. Accordingly, the Defendants' motion will be granted in favor of Bonner County.

**B. Action under State Law**

Plaintiffs brought a civil action for damages against the Defendants, each of whom was acting within the course and performance of his duties at the time of the incidents in question. Defendants move for dismissal of the state law claims based on the Plaintiffs' failure to comply with the state bond requirements. Plaintiffs admit they have not filed a bond, but argue Defendants have waived their right to make such a claim and/or that the bond requirement has been repealed. The Court rejects both of Plaintiffs' arguments.

Idaho Code § 6-610 precludes a party from filing a complaint against a law enforcement officer unless the party also files a written undertaking and requisite bonds. Specifically, § 6-610 provides that before any civil action may be filed against any law enforcement officer, when such action arises out of, or in the course of the performance of his duty, the proposed plaintiff, as a condition precedent, shall file a written undertaking with at least two sufficient sureties in an amount to be fixed by the court. While there is no bond requirement for claims arising under 42 U.S.C. § 1983, the requirements under § 6-610 do apply to the claims brought under state law.

**MEMORANDUM ORDER - 7**

Plaintiffs must comply with the mandatory bond requirements when suing peace officers under state law pursuant to Idaho Code § 6-610.  See Greenwade v. Idaho State Tax Commission, 119 Idaho 501, 808 P.2d 420 (Ct. App. 1991).  While a court may waive costs, fees and security for indigent parties, pursuant to Idaho Code § 31-3220, a party must file an affidavit stating that he or she is indigent and unable to pay the costs, fees and securities associated with a case.  This affidavit can be examined by the Court, and after an informal inquiry, if the Court determines the party is indigent, the Court could waive certain costs, fees and security.  However, the Plaintiffs in this case have filed no such motion, and no indigency has been shown.

Defendants have not waived the § 6-610 bond requirement through inaction or any other means.  Idaho Code § 6-610(4) clearly allows a defendant or respondent law enforcement officer to raise a plaintiff's failure to file a bond at any time during the course of a civil action.  Furthermore, the Court rejects the assertion by Plaintiffs that the Idaho Tort Claims Act has impliedly repealed the undertaking requirement of § 6-610.  See J.H. v. Jefferson County, No. CV-05-0518-E-BLW, 2007 WL 219996, at *5 (D. Idaho. January 25, 2007); Lewis v. City of Nampa, et al, Civil Case No. 04-502-S-EJL.  Therefore, Mr. Morton's claims against the police officers and deputies under state law cannot prevail for failure to file a bond prior to initiating this action.

Moreover, the Defendants are immune from liability for their actions involving Mr. Morton's arrest under Idaho Code § 6-904 which provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which...arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.  IDAHO CODE § 6-904 (1988).

**MEMORANDUM ORDER - 8**

There is a rebutable presumption that any act or omission by an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent. Anderson v. Spalding, 50 P.3d 1004, 1013 (Idaho 2002). The record is void of any evidence that the Defendants were acting with malice or criminal intent when arresting Mr. Morton. As a matter of law, all the state claims, including Plaintiff Trudi Morton's claim for loss of consortium, are dismissed.

**C. 42 U.S.C. § 1983 Claims**

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that the police officers were acting under color of state law when performing their duties on April 7, 2004. Therefore, the question becomes, did the officers' actions deprive the Plaintiffs of a right, privilege or immunity secured by the Constitution or federal law.

Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The initial question in determining whether an officer is entitled to qualified immunity is

**MEMORANDUM ORDER - 9**

whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965 F.2d 1532, 1534 (9th Cir. 1992).

The Defendants claim the arresting officers are entitled to qualified immunity for their actions. Plaintiffs argue Defendants are not entitled to qualified immunity as there was no probable cause for the entry into Mr. Morton's house, and, therefore, the entry was a violation of Mr. Morton's Fourth Amendment right to be free from unwarranted search and seizure. Viewing the facts in a light most favorable to Mr. Morton, the Court finds as a matter of law that Mr. Morton's constitutional rights were not violated when the officers entered the house, used force to subdue Mr. Morton, placed him under arrest, or at any other time during the incident in question. The police officers were justified in responding to a 911 call from the six year old child and in entering the premises despite the absence of a warrant. An officer's warrantless search of a dwelling does not violate the Fourth Amendment if the search is "supported by probable cause and the existence of

**MEMORANDUM ORDER - 10**

exigent circumstances." Baily v. Newland, 263 F.3d 1022, 1032 (9th Cir.2001).  In this case, probable cause was established when the child called 911 seeking help. Mincey v. Arizona, 437 U.S. 385, 392 (1978). ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."); see Satchell v. Cardwell, 653 F.2d 408, 412 (9th Cir. 1981) (citing Mincy for proposition that need to investigate emergency gives rise to right to enter and search without a warrant).

In addition, many courts have held knowledge or reasonable belief that minor children in a residence are without adult supervision is an exigent circumstance that authorizes police entry to help those believed to be in need of immediate aid. State v. Jones, 188 Ariz. 388, 937 P.2d 310, 317 (1997); State v. Plant, 236 Neb. 317, 461 N.W.2d 253 (1990); State v. Copeland, 631 So. 2d 1223 (La. App. 1994); State v. Garland, 270 N.J.Super. 31, 636 A.2d 541 (1994); State v. Jones, 45 Or.App. 617, 608 P.2d 1220 (1980).

Further, even when viewing the facts in a light most favorable to the Plaintiffs, it is clear Mr. Morton's constitutional rights were not violated when he was placed under arrest by the police officers.  A warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.  Devenpeck v. Alford, 125 S. Ct. 588 (U.S. 2004).  It is a crime for any person to willfully cause or permit the person or health of a child to be injured, or willfully cause or permit a child to be placed in such situation that its person or health may be endangered.  Idaho Code § 18-1501 (2005).  "Willfully" means acting or failing to act where a reasonable person would know the act or failure to act is likely to result in injury or harm or is likely to endanger the person, health,

**MEMORANDUM ORDER - 11**

safety or well-being of the child. Id. Here, the police officers had probable cause to believe that Mr. Morton was heavily intoxicated based on his unsteady stance, his glassy, bloodshot eyes, his flushed face, his slurred speech, and the odor of alcohol emanating from his bedroom. Thus, the officers had probable cause to believe Mr. Morton was unable to properly care for the child, which could have resulted in injury to the child. Therefore, in arresting Mr. Morton, the Defendants did not violate his constitutional rights.

Moreover, the Defendants did not violate Mr. Morton's constitutional rights when they used pepper-spray in an attempt to subdue him, struck him with a baton after he opened a knife sheath, or in other ways physically struggled with Mr. Morton. The Fourth Amendment allows police officers to use objectively reasonable force to effectuate an arrest. U.S. Const. Amend. IV. Jim v. County of Hawaii, 33 Fed. Appx. 857 (9th Cir. 2002). To evaluate an excessive force claim, courts consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Beier v. City of Lewiston, 354 F.3d 1058 (9th Cir. 2004). Additionally, a police officer is entitled to employ such force as in necessary to defend himself from one whom he is attempting to arrest. Jim, 33 Fed. Appx. 857. Use of such force will not result in liability under 42 U.S.C. § 1983. Id. In this case, the Defendants used pepper-spray to subdue Mr. Morton as he actively resisted arrest. Soon thereafter, the Defendants feared Mr. Morton was reaching for a knife. One officer responded by drawing a service weapon while the other struck the Plaintiff on the buttocks with a baton. Under these circumstances, and based on the recognized need for officer safety, the Defendants did not use excessive force during the arrest of the Plaintiff. Thus, because

**MEMORANDUM ORDER - 12**

Mr. Morton's constitutional rights were not violated, no further discussion is required, and the Defendants are entitled to the benefit of qualified immunity.  Therefore, as a matter of law, the Plaintiffs' claims against Officer Lunde and Officer Cruse under 42 U.S.C. § 1983 are dismissed.

Though Mr. Morton has also alleged his constitutional rights were violated under 42 U.S.C. § 1983 by the Detention Center Deputies, the Plaintiffs have failed to offer any facts to establish such a violation.  Therefore, as a matter of law, the Plaintiffs' claims under 42 U.S.C. § 1983 against Detention Center Deputies Harrison, Pulford, Wise and Cable are dismissed.

## ORDER

Being fully advised in the premises, the Court hereby orders the Motion for Summary Judgment by Defendants John Lunde, Jim Cruse, Steve Corby and Bonner County Detention Center Deupties Harrison, Pulford, Wise, and Cable and their Employer Bonner County, Idaho  (Docket No. 13) is GRANTED.  The Complaint is dismissed against all named and unnamed Defendants.

DATED:  **June 19, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 13**